IN RE the TERMINATION OF PARENTAL RIGHTS TO
BRIANCA M. W., a person under the age of 18:

ONEIDA COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner-Respondent,

v.

NICOLE W., Respondent-Appellant-Petitioner.

Supreme Court

*No. 2005AP2656. Oral argument October 30, 2006.
—Decided March 13, 2007.*

2007 WI 30

(Also reported in 728 N.W.2d 652.)

638

640

For the respondent-appellant-petitioner there were briefs and oral argument by *Martha K. Askins,* assistant state public defender.

For the petitioner-respondent there was a brief and oral argument by *Thomas D. Wiensch,* assistant corporation counsel and there was oral argument also by *Jennifer A. Stuber,* guardian ad litem.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This is a review of an unpublished decision of the court of appeals[1] affirming the circuit court's order[2] terminating Nicole W.'s (Nicole) parental rights to her daughter, Brianca M.W. (Brianca). The focus of Nicole's appeal is that the circuit court erred in granting partial summary judgment under Wis. Stat. § 48.415(10) because her parental rights to her other child, Rockey, were terminated in a default judgment. Nicole contends that there was insufficient evidence demonstrating the particularized grounds for the termination of Nicole's parental rights in regard to Rockey, which precludes the use of that termination under § 48.415(10)(b) and that a default judgment is not a "termination on grounds," as she interprets § 48.415(10)(b). Consequently, Nicole argues, partial summary judgment should not have been granted and her parental rights were unlawfully terminated.

---

[1] The appeal was decided by one judge pursuant to Wis. Stat. § 752.31(2) (2003–04). All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[2] The Honorable Robert E. Kinney, Circuit Court Judge for Oneida County, presided.

¶ 2. We conclude that Wis. Stat. § 48.415(10)(b) does not require proof of which § 48.415 ground was relied upon for a prior termination of parental rights because the phrase, "on one or more of the grounds specified in this section," in § 48.415(10)(b) refers to proving only that the prior termination was an involuntary termination. We also conclude that the order terminating Nicole's parental rights to Rockey, which arose from her default for failing to comply with a court order to personally appear at the fact-finding hearing, cannot be collaterally attacked in this proceeding and is sufficient evidence to prove that there was a prior involuntary termination of Nicole's rights to another child. Accordingly, we affirm the court of appeals.

## I. BACKGROUND

¶ 3. Nicole's daughter, Brianca, was born on October 21, 2003. Brianca was placed in foster care shortly after birth and has continued in foster care through the time of trial.[3] On March 11, 2005, the Oneida County Department of Human Services (the Department) filed a petition to terminate Nicole's parental rights to Brianca. The petition alleged two grounds for the termination of Nicole's parental rights: Wis. Stat. § 48.415(2), Brianca's continuing need of protection or services and § 48.415(10), the involuntary termination of Nicole's parental rights to another child within the previous three years.

¶ 4. The Department moved for partial summary judgment on the second ground, relying on an order

---

[3] The circuit court found that Brianca was adjudged to be in need of protection or services under Wis. Stat. § 48.13(2), (3), or (10) based on a "Child in Need of Protection and/or Services" (CHIPS) order dated December 5, 2003. The CHIPS case was identified as Oneida County Juvenile Court Case No. 03–JC–94.

filed in Waukesha County on February 3, 2003 that involuntarily terminated Nicole's parental rights to her son, Rockey.[4] The order states that Nicole was in default because she failed to appear at the fact-finding hearing and that the termination of her rights to Rockey was involuntary, but it does not state the precise grounds for the involuntary termination. To explain more fully, section 6 of the standard order form that the Waukesha County Circuit Court employed contains a list of all of the grounds found in Wis. Stat. § 48.415 for an involuntary termination. Opposite each ground is a box to check, which when checked would indicate that ground was a basis for the termination. However, the circuit court checked none of the boxes in section 6 of the form. The petition that commenced the Waukesha County termination of parental rights proceedings alleged that Nicole had abandoned Rockey, § 48.415(1), and that Rockey was in continuing need of protection or services, § 48.415(2).

¶ 5. In the present Oneida County termination proceedings, two hearings were held on the Department's motion for partial summary judgment. At the first hearing, Nicole argued that the order terminating her rights to Rockey was not sufficient because it was not a "termination on grounds," as she interprets Wis. Stat. § 48.415(10)(b), because the order was based on her default at the termination proceedings. The court reviewed the Waukesha order, which stated that Nicole was in default but did not state the specific grounds employed for the involuntary termination. The court then continued the hearing to allow the Department to produce a copy of the Waukesha petition to

---

[4] The Honorable Marianne E. Becker, Circuit Court Judge for Waukesha County, signed the order on January 24, 2003.

determine whether grounds sufficient under § 48.415 had been alleged. At the second hearing, the court reviewed the petition in combination with the Waukesha County Circuit Court order and determined that the order was sufficient to establish an involuntary termination of parental rights within the criteria set out in § 49.415(10)(b).[5]

¶ 6. Nicole appealed and repeated her argument that the termination of her parental rights to Rockey based on her default was not "based on grounds" as she interprets Wis. Stat. § 48.415(10). Nicole also argued that the default order did not show the circuit court had made findings of fact based on evidence presented to show the county had proved the grounds alleged and therefore, the prior termination order was insufficient in that way as well.

¶ 7. The court of appeals rejected Nicole's arguments and affirmed the circuit court's decision. The court of appeals reasoned that because the prior termination was involuntary, a fact that Nicole does not contest, it was necessarily accomplished on one of the grounds listed in Wis. Stat. § 48.415. *See Oneida County Dep't of Soc. Servs. v. Nicole W.*, No. 2005AP2656, unpublished slip op., ¶ 10 (Wis. Ct. App. February 7, 2006). The court of appeals also concluded that an order demonstrating an involuntary termination of parental rights to another child within the previous three years, as required in § 48.415(10)(b), was the only proof the Department was required to submit. The court of appeals reasoned that even with a default judgment rendered because Nicole failed to comply with a court

---

[5] The circuit court also found that Brianca was adjudged to be in need of protection or services under Wis. Stat. § 48.13(2), (3), or (10) based on a CHIPS order dated December 5, 2003, as required by Wis. Stat. § 48.415(10)(a).

order to personally appear at the fact-finding hearing as the basis for terminating parental rights, the Department must have proved the grounds for the termination by clear and convincing evidence. *Id.*, ¶ 11. The court stated, "[t]o require the type of extensive review suggested by Nicole would be tantamount to permitting a collateral attack on the prior TPR." *Id.*, ¶ 12.

## II. DISCUSSION

### A. Standard of Review

¶ 8. We review the partial grant of summary judgment independently, applying the same methodology as the circuit court. *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 15, 291 Wis. 2d 283, 717 N.W.2d 17. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; Wis. Stat. § 802.08(2).

¶ 9. To determine whether partial summary judgment was properly granted in this case, we interpret Wis. Stat. § 48.415(10). The interpretation of a statute is a question of law that we also review independently, "but benefiting from the analyses of the court of appeals and the circuit court." *Marder v. Bd. of Regents of the Univ. of Wis. Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Termination of Parental Rights

¶ 10. Terminations of parental rights "are among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy

permanently all legal recognition of the parental relationship.' " *Steven V. v. Kelley H.*, 2004 WI 47, ¶ 21, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768). A parent's interest in the parent-child relationship may rise to the level of a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. *Id.*, ¶ 22 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).[6] When a fundamental liberty interest is at issue, the due process clause of the Fourteenth Amendment requires that proof of parental unfitness be shown by clear and convincing evidence. *Id.*, ¶ 23.

¶ 11. The Wisconsin Children's Code, Wis. Stat. ch. 48, reflects constitutional safeguards. *Evelyn C.R.*, 246 Wis. 2d 1, ¶ 22. As provided in the Children's Code, an involuntary termination of parental rights proceeding involves two steps—grounds and disposition. *Id.*, ¶¶ 22–23. The first step, the grounds or unfitness phase, includes a fact-finding hearing "to determine whether grounds exist for the termination of parental rights." *Id.*, (quoting Wis. Stat. § 48.424).

¶ 12. Wisconsin Stat. § 48.415 sets out 12 grounds for an involuntary termination of parental rights, including the grounds relied upon here, a prior involuntary termination of parental rights to another child within the prior three years. § 48.415(10).[7] At the

---

[6] The Due Process Clause in the Fourteenth Amendment of the United States Constitution states: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

[7] The other grounds for involuntary termination include abandonment, relinquishment, continuing need of protection or

fact-finding hearing, "[t]he petitioner must prove the allegations [supporting grounds for termination] by clear and convincing evidence." *Evelyn C.R.,* 246 Wis. 2d 1, ¶ 22; Wis. Stat. § 48.31(1). While the legislative objective of the Children's Code is to promote the best interests of the child,[8] the parent's rights are a court's central focus during the grounds phase of a termination of parental rights proceeding. *Id.*

¶ 13. If grounds are found, the court must find the parent unfit. *Steven V.,* 271 Wis. 2d 1, ¶ 25. The proceeding then moves to step two, the dispositional phase. *Evelyn C.R.,* 246 Wis. 2d 1, ¶ 23; *Steven V.,* 271 Wis. 2d 1, ¶ 26 (citing *Sheboygan County DHHS v. Julie A.B.,* 2002 WI 95, ¶ 28, 255 Wis. 2d 170, 648 N.W.2d 402). At the dispositional phase, the court determines whether the best interests of the child are served by the termination of the parent's rights. *Evelyn C.R.,* 246 Wis. 2d 1, ¶ 23; *Steven V.,* 271 Wis. 2d 1, ¶ 27 (citing Wis. Stat. § 48.426(2)). While the central focus of the court proceeding is now on the best interests of the child, the parent's rights are not ignored. A parent has the right to present evidence and to be heard at the dispositional phase too. *Evelyn C.R.,* 246 Wis. 2d 1, ¶ 23 (citing Wis. Stat. § 48.427(1)-(1m)).

services, continuing parental disability, continuing denial of periods of physical placement or visitation, child abuse, failure to assume parental responsibility, incestuous parenthood, homicide or solicitation to commit homicide of parent, parenthood as a result of sexual assault, and commission of a serious felony against one of the person's children. Wis. Stat. § 48.415(1)-(9m).

[8] Wisconsin Stat. § 48.01 states: "[i]n construing this chapter, the best interests of the child . . . shall always be of paramount consideration."

¶ 14. We have concluded that summary judgment may be employed in the grounds phase of a termination of parental rights proceeding when there is no genuine factual dispute that would preclude finding one or more of the statutory grounds by clear and convincing evidence. *Steven V.,* 271 Wis. 2d 1, ¶¶ 28–44 (citing Wis. Stat. § 802.08(2)-(3)). We explained that nothing in the statutes prohibits summary judgment in the grounds phase and that § 802.08 sets the procedure to be followed. *Id.,* ¶ 33. We further explained that "[s]ome statutory grounds for unfitness . . . are expressly provable by official documentary evidence, such as court orders or judgments of conviction." *Id.,* ¶ 37. Wisconsin Stat. § 48.415(10) is one of the subsections we listed as provable by court order. *Id.,* ¶¶ 37–38. We explained:

> The availability of partial summary judgment in the grounds phase of a TPR proceeding where the entire proof of unfitness under the statute is an undisputed court record furthers the legislature's purpose and is consistent with the general rule that the provisions of the code of civil procedure apply to all civil actions and proceedings.

*Id.,* ¶ 39.

¶ 15. In this case, we address whether partial summary judgment was properly granted under Wis. Stat. § 48.415(10) when the order that terminated Nicole's parental rights to Rockey did not state the explicit § 48.415 ground upon which the circuit court relied and the prior involuntary termination was based on her default for failing to comply with a court order to personally appear at the fact-finding hearing of the grounds phase of the termination of parental rights proceeding. With these questions in mind, we begin by determining the meaning of § 48.415(10)(b).

## C. Statutory Interpretation

¶ 16. We interpret Wis. Stat. § 48.415(10) to determine what is required to satisfy the proof requirements of § 48.415(10)(b). Statutory interpretation begins with the language of the statute. If the meaning of the words of a statute is plain, we ordinarily stop our inquiry and apply the words chosen by the legislature. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citing *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). Statutes are interpreted in the context in which they are used, as part of a whole and in relation to the language of surrounding or closely related statutes. *Id.,* ¶ 46. A statute is ambiguous "if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.,* ¶ 47. If a statute is ambiguous, the court may examine extrinsic sources, such as legislative history. *Id.,* ¶ 48. However, "[s]tatutory interpretation involves the ascertainment of meaning, not a search for ambiguity." *Id.,* ¶ 47 (quoting *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 25, 260 Wis. 2d 633, 660 N.W.2d 656).

¶ 17. Wisconsin Stat. § 48.415(10) provides:

Prior involuntary termination of parental rights to another child, which shall be established by proving all of the following:

(a) That the child who is the subject of the petition has been adjudged to be in need of protection or services under s. 48.13(2), (3) or (10).

(b) That, within 3 years prior to the date the court adjudged the child who is the subject of the petition to be in need of protection or services as specified in par.

650

(a), a court has ordered the termination of parental rights with respect to another child of the person whose parental rights are sought to be terminated on one or more of the grounds specified in this section.

¶ 18. We conclude that the statute is not ambiguous and that its plain language requires that: (1) the child who is the subject of the petition has been adjudged to be in need of protection or services under Wis. Stat. § 48.13(2), (3) or (10); and (2) within the three years prior to that adjudication a court has terminated the parent's rights to another child in an involuntary termination proceeding. We come to this second conclusion because the words of § 48.415(10)(b), "on one or more of the grounds specified in this section," when read in the context of the whole statute, plainly refer to the 12 grounds listed for an *involuntary* termination of rights under § 48.415. This is significant because it is only an *involuntary* termination of rights that is sufficient to satisfy § 48.415(10). Stated otherwise, if Nicole had voluntarily given up her rights to Rockey, the order terminating her parental rights to him would be insufficient to satisfy § 48.415(10) because that order would not have been based "on one or more of the grounds specified in this section," i.e., in § 48.415.

¶ 19. Wisconsin Stat. § 48.415(10)(b) does not require proof of which of the available 12 grounds set out in § 48.415 was the basis for the involuntary termination because the phrase, "on one or more of the grounds specified in this section," is meant as only a general directive that assures the termination of rights was involuntary. In regard to the sufficiency of a prior order that can be used as grounds under § 48.415(10), there is

651

no need for the order to specify which ground was employed, as any of the grounds set out in § 48.415 is sufficient to satisfy the requirement of paragraph (10)(b).[9] Furthermore, there is no reason that the legislature would require proof of which ground under § 48.415 was used in the prior termination because by enacting § 48.415 with multiple grounds for an involuntary termination of rights, the legislature established that proving any single ground listed therein by clear and convincing evidence is sufficient for a court to conclude that a parent was unfit. *Steven V.,* 271 Wis. 2d 1, ¶ 25.

¶ 20. Although we do not consult legislative history to interpret Wis. Stat. § 48.415(10) because we have concluded that it is unambiguous, we may do so to confirm our decision. *Kalal,* 271 Wis. 2d 633, ¶ 51. In this case, we note that the joint legislative council note analyzing § 48.415(10) is consistent with our interpretation of the statute. *See* 1995 Wis. Act 275, § 89. The analysis states:

> Note: Adds a ground for involuntary TPR based on the involuntary TPR of another child when the following conditions are met:
>
> 1. The child who is the subject of the petition has been adjudicated CHIPS under s. 48.13(2), stats., (abandonment), (3), stats., (sexual or physical abuse) or (10), stats., (parent, guardian or legal custodian neglects, refuses or is unable for reasons other than

---

[9] Of course the issue may be different if the termination of Nicole's parental rights to Rockey were being appealed. In that case, the reviewing court could be asked to ascertain whether sufficient proof was admitted by the circuit court to support the court's determination that a specific ground was proved by clear and convincing evidence. However, an appeal of the termination of Nicole's parental rights to Rockey is not before us.

poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child); and

> 2. Within the 3 years prior to the date the child was adjudicated CHIPS, *a juvenile court has ordered the involuntary TPR of another of the person's children.*

*Id.* (emphasis added). The joint legislative council note explaining the statute supports our interpretation that the language requiring the prior termination to be on grounds specified in § 48.415 means only that it must be proved that the prior termination was involuntary.

¶ 21. As one of her contentions, Nicole asserts that the termination of her parental rights to Rockey may not be used to satisfy Wis. Stat. § 48.415(10)(b) because the Waukesha County Circuit Court failed to check any of the boxes in section 6 on the form order the court used. Nicole's argument is not persuasive because, as we have explained above, the last clause in § 48.415(10)(b) requires only that the prior termination be an involuntary termination and does not require proof of which grounds were the bases for that termination. Nicole concedes that her parental rights to Rockey were involuntarily terminated.

¶ 22. Furthermore, once a court has entered an order terminating a parent's rights, unless it is overturned in a further proceeding, it is presumed valid. *See Zrimsek v. Am. Auto. Ins. Co.,* 8 Wis. 2d 1, 3, 98 N.W.2d 383 (1959). In *Zrimsek,* we explained that a "judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action

or proceeding, except . . . for fraud in its procurement." *Id.*, (quoting 49 C.J.S. Judgments, § 401). We so explained in the context of examining the finality of a default judgment on a bail bond action against the principal. *Id.*, at 3–4. We concluded that the presumption of validity of judgments is no less binding if the judgment was based on a default than if it were based on a full trial.[10] *Id.*

¶ 23. Based on Wisconsin's presumption of validity of judgments, we must assume the Waukesha County Circuit Court found by clear and convincing evidence that at least one of the grounds listed in Wis. Stat. § 48.415 had been proved before it terminated Nicole's parental rights to Rockey. This is so because Nicole does not allege that the Waukesha Circuit Court was without jurisdiction, that the order was appealed or otherwise set aside or that it was procured by fraud.

¶ 24. Furthermore, that an order does not have a written statement of which ground was the basis for an involuntary termination, but instead lists all possible grounds, is no basis for nullifying the effect of the order. We must assume the order is valid. Therefore, it is logical also to assume the missing check mark on the standard form employed by the Waukesha County Circuit Court is but a clerical or scrivener's error. *See Bostwick v. Van Vleck,* 106 Wis. 387, 390, 82 N.W. 302 (1900) (stating that a clerical mistake is "a mere omission to preserve of record, correctly in all respects, the actual decision of the court, which in itself was free

---

[10] The Waukesha County Circuit Court had the authority to render a default judgment in response to Nicole's failure to comply with its order that she appear at the fact-finding hearing. *See Gaertner v. 880 Corp.,* 131 Wis. 2d 492, 497, 389 N.W.2d 59 (Ct. App. 1986). Nicole does not contest this authority.

from error," while an error in a judgment is "something that the trial court erroneously omitted to pass upon or considered and passed upon erroneously").

¶ 25. The Oneida County Circuit Court said it also assumed the omission "was probably an inadvertent oversight in the filling out of the standard form. The rest of the form appeared to have been filled out fine . . . ." Mere clerical errors do not affect the validity of orders. *See, e.g., State ex rel. Gottschalk v. Miller,* 136 Wis. 344, 348, 117 N.W. 809 (1908) (affirming an order of the supervisors of the town of Eagle to lay out a new highway and discontinue part of an old one because the alleged error in the description of the highway was "a mere clerical error and does not affect the validity of the order").

D. Collateral Attack

¶ 26. Nicole also contends that the Waukesha County order that terminated her parental rights to Rockey cannot be used because it was entered after she was found in default for failing to comply with a court order to personally appear at the fact-finding hearing. However, a circuit court must take sufficient evidence to prove by the clear and convincing standard of proof that grounds for the termination exist, and it must make such a finding even when the parent is found in default for failing to comply with a court order that she personally appear. *Evelyn C.R.,* 246 Wis. 2d 1, ¶ 26.[11]

[11] In *Evelyn C.R. v. Tykila S.,* 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768, the parent did not personally appear at the fact-finding hearing and the circuit court found that grounds

655

Nevertheless, Nicole requests us to look under the order to the proceedings in Waukesha County to assure that this was done.

¶ 27. We agree with the court of appeals that to require more evidence than a prior involuntary termination order to satisfy Wis. Stat. § 48.415(10) would be tantamount to permitting a collateral attack on the prior order. A collateral attack on a judgment is "an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it." *Zrimsek,* 8 Wis. 2d 1, 3 (citing 5 Callaghan's, Bryant, Wisconsin Pleading and Practice (3d ed.), p. 373, § 37.97).[12]

¶ 28. In general, "a judgment is binding on the parties and may not be attacked in a collateral action unless it was procured by fraud." *State v. Madison,* 120 Wis. 2d 150, 154, 353 N.W.2d 835 (Ct. App. 1984); *cf.*

---

existed to terminate the parental rights based on allegations in the petition that the parent had abandoned the child. *Id.,* ¶ 9. We concluded the court had erroneously exercised its discretion and reasoned, "by entering a default judgment against Tykila [the parent] on the issue of abandonment without first taking evidence sufficient to support such a finding, the circuit court failed to comply with the constitutional and statutory requirements for termination of parental rights." *Id.,* ¶ 19. However, we found a factual basis in the record to support the termination and concluded the circuit court's procedural error was harmless. *Id.,* ¶¶ 32–35.

[12] *See State v. Hahn,* 2000 WI 118, ¶¶ 17, 28, 238 Wis. 2d 889, 618 N.W.2d 528 (allowing an offender to collaterally attack a prior conviction in an enhanced sentence proceeding "only when the challenge to the prior conviction is based on the denial of the offender's constitutional right to a lawyer").

*State v. Campbell,* 2006 WI 99, ¶¶ 52–55, 294 Wis. 2d 100, 718 N.W.2d 649. Wisconsin courts have recognized the general disfavor of allowing collateral challenges on the basis that "they disrupt the finality of prior judgments and thereby tend to undermine confidence in the integrity of our procedures and inevitably delay and impair the orderly administration of justice." *State v. Gudgeon,* 2006 WI App 143, ¶ 6, 295 Wis. 2d 189, 720 N.W.2d 114 (citing *Custis v. United States,* 511 U.S. 485, 497 (1994) and *Hahn,* 238 Wis. 2d 889, ¶¶ 26–28 (following *Custis*)) (internal quotations omitted). The finality of a judgment in a termination of parental rights proceeding is even more critical because, as the legislature recognized, "instability and impermanence in family relationships are contrary to the welfare of children." *Waukesha County v. Steven H.,* 2000 WI 28, ¶ 32, 233 Wis. 2d 344, 607 N.W.2d 607.

¶ 29. Nicole contends that her attack on the termination of rights order that arose in part from her default rendered because she failed to comply with a court order to personally appear is not a collateral attack on the validity of the order. She characterizes it as a failure of proof by the Department because it has not shown what actually occurred at the fact-finding hearing in Waukesha County Circuit Court when her parental rights to Rockey were terminated. For example, in oral argument her counsel raised the issue of a possible denial of the right to counsel in the prior proceeding. When counsel was asked whether Nicole was attacking the Waukesha County termination of her parental rights to Rockey because she had not been represented by counsel in that proceeding, counsel responded that it was not possible to tell whether she had been represented by counsel, given the record before the court.

¶ 30. We have allowed defendants to collaterally attack a prior criminal conviction in the very limited circumstance of the deprivation of the right to counsel. In *Hahn,* we held that a defendant may collaterally attack a prior conviction that serves to enhance a prospective sentence where the defendant makes a prima facie showing that his or her constitutional right to counsel provided by the Sixth Amendment to the United States Constitution was violated in that prior proceeding.[13] *Hahn,* 238 Wis. 2d 889, ¶¶ 17, 28. We subsequently noted that we were "bound as a matter of federal constitutional law" and that "the Supreme Court's concerns about ease of administration and finality of judgments weighed in favor of a bright-line rule against collateral attacks, with the limited exception of right-to-counsel violations." *State v. Peters,* 2001 WI 74, ¶ 15, 244 Wis. 2d 470, 628 N.W.2d 797 (citing *Hahn,* 238 Wis. 2d 889, ¶¶ 28–29).

¶ 31. We note that allowing a collateral attack due to a violation of the right to counsel has been applied only in the context of criminal proceedings and a termination of parental rights proceeding is civil in nature. *Steven V.,* 271 Wis. 2d 1, ¶ 32 (stating termination of parental rights proceedings under Chapter 48 are civil proceedings). The Sixth Amendment right to counsel does not attach in civil proceedings. *State v. Krause,* 2006 WI App 43, ¶ 11, 289 Wis. 2d 573, 712 N.W.2d 67 (citing *Stroe v. INS,* 256 F.3d 498, 500 (7th Cir. 2001)).

---

[13] The Sixth Amendment to the United States Constitution states: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This amendment is made applicable to the states by the Fourteenth Amendment. *Hahn,* 238 Wis. 2d 889, ¶ 4 n.3 (citing *Gideon v. Wainwright,* 372 U.S. 335 (1963)).

¶ 32. However, even though termination of parental rights proceedings are civil proceedings, we have determined that they "require heightened legal safeguards against erroneous decisions." *Evelyn C.R.*, 246 Wis. 2d 1, ¶ 21 (concluding the Fourteenth Amendment to the United States Constitution requires a showing of clear and convincing evidence that the termination is appropriate).

¶ 33. While the Sixth Amendment does not apply to civil proceedings, the right to counsel in termination of parental rights proceedings is accorded by Wis. Stat. § 48.23(2).[14] The legislature emphasized the necessity of counsel and "[t]he legislative edict is that, in termination proceedings, 'any parent . . . shall be represented by counsel.' " *M.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 437, 342 N.W.2d 410 (1984). We have recently affirmed that the statutory right to counsel is necessary to preserve the "fairness and integrity" of termination proceedings. *State v. Shirley E.*, 2006 WI 129, ¶ 63, 298 Wis. 2d 1, 724 N.W.2d 623. We have further explained that the statutory right to counsel includes effective assistance of counsel. *A.S. v. State,* 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992). In examining whether assistance of counsel in an involuntary termination of rights proceeding was effective, we have applied the *Strickland* test. *Id.*, at 1005 (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). In *Strickland,* the United States Supreme Court adopted the following two-part test:

---

[14] Wisconsin Stat. § 48.23(2) provides in relevant part: "If a proceeding involves . . . the involuntary termination of parental rights, any parent 18 years old or older who appears before the court shall be represented by counsel; but the parent may waive counsel provided the court is satisfied such waiver is knowingly and voluntarily made."

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' *guaranteed the defendant by the [S]ixth [A]mendment.*
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* (citing *State v. Harvey,* 139 Wis. 2d 353, 375, 407 N.W.2d 235 (1987) (emphasis added). Therefore, we have applied Sixth Amendment concepts in the context of termination of parental rights proceedings, even though the proceedings are civil in nature and the Sixth Amendment does not apply to civil proceedings.

¶ 34. When a claim of denial of the right of counsel is made, the claimant has the burden to make a prima facie showing of a violation of the right to counsel. *State v. Ernst,* 2005 WI 107, ¶ 25, 283 Wis. 2d 300, 699 N.W.2d 92. In that showing:

> [W]e require the defendant to point to facts that demonstrate that he or she did not know or understand the information which should have been provided in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel. Any claim of a violation on a collateral attack that does not detail such facts will fail.

*Id.,* (concluding there was not a prima facie showing because the defendant did not mention specific facts that indicated his waiver of counsel was not knowing, intelligent, and voluntary) (citation omitted).

¶ 35. However, we need not determine whether the prior Waukesha County termination of rights order may be collaterally attacked due to a violation of the right to counsel because Nicole made no prima facie showing that she was denied the right of counsel in the termination of rights proceeding regarding Rockey. *Hahn,* 238 Wis. 2d 889, ¶¶ 17, 28; *Ernst,* 283 Wis. 2d 300, ¶ 25. Furthermore, Nicole does not argue that she was not actually represented by counsel in the prior termination proceedings; she simply argues that the record does not demonstrate she was represented by counsel. However, the Department does not have the burden of proof in a collateral attack; Nicole does. *See Ernst,* 283 Wis. 2d 300, ¶ 25 (citing *State v. Hampton,* 2004 WI 107, ¶ 46, 274 Wis. 2d 379, 683 N.W.2d 14). She has not met it here.

### III. CONCLUSION

¶ 36. We conclude that Wis. Stat. § 48.415(10)(b) does not require proof of which § 48.415 ground was relied upon for a prior termination of parental rights because the phrase, "on one or more of the grounds specified in this section," in § 48.415(10)(b) refers to proving only that the prior termination was an involuntary termination. We also conclude that the order terminating Nicole's parental rights to Rockey, which arose from her default for failing to comply with a court order to personally appear at the fact-finding hearing, cannot be collaterally attacked in this proceeding and is sufficient evidence to prove that there was a prior involuntary termination of Nicole's rights to another child. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The Department of Social Services' motion for

661

partial summary judgment terminating Nicole W.'s parental rights to Brianca was based on a certified copy of a Waukesha County Circuit Court order terminating Nicole W.'s parental rights to another child, Rockey. The issue presented in the instant case is whether the Department was entitled, as a matter of law, to a partial summary judgment on the basis of the Waukesha order.

¶ 38. The text of Wis. Stat. § 48.415(10) clearly, explicitly, and plainly requires that the "prior involuntary termination of parental rights . . . shall be established by proving . . . that a court has ordered the termination of parental rights [to the other child] . . . on one or more of the grounds specified in this section."[1]

¶ 39. The Waukesha order terminating Nicole W.'s parental rights to her other child, Rockey, a copy of which is attached, does not satisfy the requirements of Wis. Stat. § 48.415(10). Everyone agrees, including, I am sure, the reader, that the order fails state the grounds upon which the termination was ordered.[2]

---

[1] Section 48.415(10) provides as follows:

Prior involuntary termination of parental rights to another child, which shall be established by proving all of the following:

(a) That the child who is the subject of the petition has been adjudged to be in need of protection or services under s. 48.13(2), (3) or (10).

(b) That, within 3 years prior to the date the court adjudged the child who is the subject of the petition to be in need of protection of services as specified in par. (a), a court has ordered the termination of parental rights with respect to another child of the person whose parental rights are sought to be terminated on one or more of the grounds specified in this section.

[2] Observe that the order provides several boxes to be marked to indicate on which grounds the termination of parental rights was ordered. None was marked and no other reference to the statutory ground for termination appears.

¶ 40. The majority opinion plugs the omission in the Waukesha order relating to Rockey by rewriting Wis. Stat. § 48.415(10). The majority opinion simply reads the statutory words "ordered the termination of parental rights ... on one or more of the grounds specified in this section" out of the statute book.

¶ 41. The majority opinion interprets this statutory language as merely requiring that the prior termination be an involuntary termination; the ground of termination need not be stated. According to the majority opinion, "the last clause in § 48.415(10)(b) requires only that the prior termination be an involuntary termination and does not require proof of which grounds were the bases for that termination." Majority op., ¶ 21; *see also* ¶¶ 2, 36.[3]

¶ 42. By rewriting Wis. Stat. § 48.415(10)(b), the majority opinion can declare the Waukesha order sufficient even though the order does not specify any ground for terminating Nicole W.'s parental rights to the child. I disagree with the majority opinion. If the legislature had concluded that proof of a prior involuntary termination of parental rights was all that was needed it could have simply so stated in Wis. Stat. § 48.415(10). It did not.

¶ 43. I would not rewrite the text of the statute. I would apply the statute as written by the legislature, giving meaning to all of the words. The statute clearly states that a prior involuntary termination of parental rights to another child shall be established by proving

---

[3] Other paragraphs in the majority opinion repeat that it is only necessary that the prior termination be "involuntary," majority op., ¶ 20, and that "there is no need for the [Waukesha] order to specify which ground was employed, as any of the grounds set out in § 48.415 is sufficient to satisfy the requirement of paragraph (10)(b)." Majority op., ¶ 19.

that the prior court ordered termination on a ground specified in Wis. Stat. § 48.415. The Waukesha order relied upon by the Department did not satisfy this requirement, and therefore the Department's motion for partial summary judgment must fail as a matter of law.

¶ 44. Even if I were to accept the majority opinion's reading of the statute, the Waukesha order does not satisfy the statute. The Waukesha order is based on a default, not on any of the statutory grounds, as I explain below.

¶ 45. Recognizing the defect in the Waukesha order, the circuit court attempted to repair the Waukesha order by importing into the Waukesha order the grounds for termination stated in the petition for termination filed in Waukesha. I disagree with the circuit court's approach.

¶ 46. At the hearing on the motion for summary judgment in the present case, Nicole W. asserted, and the circuit court agreed, that the Waukesha order was defective and could not support the motion for summary judgment as a matter of law because the order did not state a statutory ground for termination.

¶ 47. Accordingly, the circuit court adjourned the hearing on the motion for summary judgment and permitted "the corporation counsel to obtain the rest of the file . . . ." The circuit court suggested various Waukesha County documents the corporation counsel might produce to cure the deficiency, such as the petition for termination and a transcript of the Waukesha County court hearings, and even proposed that the Department have the Waukesha court amend the order to correct it.[4]

---

[4] The circuit court stated that the corporation counsel should "find out what the petition alleged and, perhaps, obtain

¶ 48. When, at the motion hearing, the corporation counsel offered an uncertified copy of the termination petition filed in Waukesha County, the circuit court refused to accept it. The circuit court instructed, "[W]e should get a certified copy and we should also compare it with the order and we should give Waukesha County the opportunity to amend the order by, you know, having one of the boxes checked here."[5]

¶ 49. At the next hearing on the motion for partial summary judgment, the corporation counsel produced only a certified copy of the petition for termination of parental rights to Rockey filed in Waukesha County, which, as might be expected, stated a statutory ground for termination. The circuit court found that the peti-

a transcript of the proceedings at which the default order was entered. Presumably that was transcribed because I think it would have been in the ordinary course of things. . . ."

The circuit court further explained that it could not "determine from the current order what the grounds really were. What was Nicole W. defaulting to? What did the petition allege? That's really what we have to have. . . . We don't know really who the scrivener of the order was. . . ."

The circuit court suggested that "it may well be that we should really have an amended order out of Waukesha County. . . . [I]t would be preferable to let Waukesha County correct its apparent inadvertent error."

The circuit court concluded its instructions to the corporation counsel by saying that "what we have to do here is come back here and find out at that point whether the basis that was stated—or bases stated were those mentioned in the statute. So we can't decide it today and we should have that information supplied."

[5] The circuit court was referring to the boxes on the order terminating parental rights which could be marked to indicate on which statutory grounds the order was granted. None of the boxes was checked here.

tion was good enough to plug the hole in the Waukesha order. I disagree with the circuit court. There is no proof the ground for termination alleged in the petition was ever proven.

¶ 50. Although the form order provides the circuit court an opportunity to state that the matter was tried to a jury or to the circuit court and that one or more of the statutory grounds for termination was found, the completed Waukesha order in the instant case merely states that Nicole W. failed to appear and was in default. The spaces in which to indicate that a hearing was held and that fact-finding occurred remain blank on the form order.

¶ 51. The Waukesha order on its face violates chapter 48 of the statutes by relying only on default and not fact-finding. Before entering a default judgment in a termination of parental rights case, a circuit court must hold a fact-finding hearing and find by clear and convincing evidence, upon the evidence presented, that the grounds to terminate the defaulting parent's rights to the child have been proven, even when a parent fails to appear at all and defaults or fails to appear at a proceeding in disobedience to a court order. *Evelyn C.R. v. Tykila S.*, 2001 WI 100, ¶¶ 24–25, 246 Wis. 2d 1, 629 N.W.2d 768.

¶ 52. The Waukesha order and the petition relating to Rockey upon which the Department relies do not establish that the circuit court held a fact-finding hearing or made the required findings. The only reasonable reading of the Waukesha order terminating Nicole W.'s parental rights to Rockey was that the order was entered on Nicole W.'s failure to appear and that no fact-finding hearing was held and no findings were made. Although this court has been clear that the fact-finding hearing must occur even if a parent does

not appear, it is apparently not uncommon for circuit courts to skip an evidentiary hearing and fact-finding when a parent fails to appear for it. *See Torrance P. v. Shirley E.*, 2006 WI 129, 298 Wis. 2d 1, 724 N.W.2d 623; *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768. Accordingly, I conclude that the circuit court erred in relying on the petition to terminate parental rights to Rockey to fill the void in the Waukesha order.

¶ 53. The sad part of the case is that this dispute could have been resolved simply and swiftly, thereby bringing permanency to Brianca's life. All the corporation counsel had to do to satisfy Wis. Stat. § 48.415(10) in the instant case was to produce in the circuit court, as the circuit court suggested, a transcript of the Waukesha County proceedings or a corrected copy of the Waukesha order. Either of these methods would have clearly demonstrated one way or the other whether the prior termination of parental rights was on statutory grounds.

¶ 54. Because partial summary judgment was erroneous, I would reverse the circuit court order granting partial summary judgment and remand the matter to the circuit court to give the Department an opportunity to prove that the Waukesha County Circuit Court "ordered the termination of parental rights [to Nicole W.'s child Rockey] . . . on one or more of the grounds specified [in Wis. Stat. § 48.415(10)]." If the Department cannot offer such proof, then the circuit court must, as Nicole W.'s brief requests, hold a trial on Nicole W.'s fitness as a parent with respect to Brianca.

¶ 55. In any event, the court's rewriting of the statute should have ended the majority opinion. The statute, as rewritten by the majority opinion, disposes fully of the case. Nevertheless, the majority opinion

reaches out to discuss and decide other issues. It tries to bolster its opinion, declaring, without any basis, an error in the order (majority op., ¶ 24), and relying on a presumption of the validity of a judicial proceeding (majority op., ¶¶ 22–23). It seems to me that it is just as likely that the order was correct and reflected an error at the proceedings as that the order was in error and the proceedings correct.

¶ 56. The majority opinion then wanders even more broadly and addresses collateral attacks on a prior judgment terminating parental rights (majority op., ¶¶ 27–28), although no such collateral attack has been made in the present case, and winds up with an unnecessary discussion of Nicole's Sixth Amendment right to counsel in the Waukesha court (majority op., ¶¶ 30–35).

¶ 57. Even if I agreed with the mandate, I would not join these parts of the majority opinion because they are not necessary to a decision in this case; I do not write to them now because they are not actually before the court. A court should not reach out and decide matters not before it. Less is often more when deciding cases before the court. "If an issue—no matter how important or interesting—is not squarely presented by a case, the court should not reach out to decide it. The court will get another chance—particularly if the court notes the issue but does not express any opinion on it."[6]

---

[6] *See* Chicago Council of Lawyers, *Evaluation of the United States Court of Appeals for the Seventh Circuit,* 43 DePaul L. Rev. 673, 685–86 (Spring 1994) (footnotes omitted). The Chicago Council of Lawyers conducted the evaluation to provide information to judges on how they are perceived by the Chicago bar and to provide information to lawyers and litigants practicing in the Seventh Circuit.

¶ 58. David M. Borden, Associate Justice of the Connecticut Supreme Court, offered the following advice on appellate decision making: "[W]e ought to decide only what the case fairly presents. Put another way, ordinarily we ought not reach out to decide what is not reasonably necessary to the decision, even though we are convinced that what we have to say in that regard is correct."[7]

¶ 59. For the reasons set forth, I dissent.

¶ 60. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR., join this opinion.

---

[7] Hon. David M. Borden, *Some Neutral Principles Revisited,* 27 Conn. L. Rev. 1, 13 (Fall 1994).