COURT OF APPEALS
DECISION
DATED AND FILED

October 4, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1245**

STATE OF WISCONSIN

Cir. Ct. No.  2021TP64

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J. W., JR., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

Q. M.,

      RESPONDENT-APPELLANT.

       APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1      WHITE, J.[1]   Q.M. appeals the order terminating her parental rights to her son, J.W., Jr.  She argues that the circuit court erred when it denied her the opportunity to present evidence during the dispositional hearing that her son's removal was unjustified.  Upon review of the record, we conclude that the circuit court considered the best interests of the child and the required statutory factors when it determined that termination of Q.M.'s parental rights was in her son's best interests.  Accordingly, we affirm.

## BACKGROUND

¶2      In March 2021, the State filed petition to terminate the parental rights of Q.M. and J.W., the parents of J.W., Jr., who was born in June 2019, and who was removed from their care in January 2020 after an alleged incident of domestic violence arising out of Q.M.'s drug use.[2]   On November 29, 2021, Q.M. decided to enter a no-contest plea to the grounds for the TPR.  After a thorough colloquy, the circuit court accepted her no-contest plea on the ground of continuing CHIPS, under WIS. STAT. § 48.415(2).  During the required "prove up," the ongoing case manager from Children's of Wisconsin—the agency providing management of J.W., Jr.'s out of home care—offered in-depth testimony that Q.M. failed to satisfy the conditions of return in the dispositional

---

[1]   This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]   J.W.'s parental rights were also terminated and he separately appeals.  We discuss his case here only to the extent necessary and relevant to Q.M.'s appeal.  His case is released concurrently with Q.M.'s case.  *See* **State v. J.W.**, No. 2022AP1338, unpublished slip op., (WI App October 4, 2022).

order, which included controlling her drug addiction and mental health disorders.[3] The circuit court found that the State proved the ground existed and, accordingly, found Q.M. an unfit parent, pursuant to WIS. STAT. § 48.424(4).

¶3    During the multiple days of hearings in December 2021, the court considered the disposition of the TPR petition with regard to Q.M.[4]  The case manager testified that in the almost two years that J.W., Jr., "has been in out-of-home care … neither parent has made nearly sufficient progress to alleviate the safety concerns that we have."  The case manager testified that the "current concerns that we have regarding [Q.M.] are her drug use and unmanaged mental health."  The case manager testified that Q.M.'s drug use was concerning because of the effects that showed during supervised visitation, which included struggling to stay awake and slurring her words.  The case manager was also concerned about her lack of engagement in any services offered to her, including alcohol and other drug abuse (AODA), mental health, domestic violence, and parenting.

¶4    Q.M.'s counsel asked the case manager why the Division of Milwaukee Child Protective Services (DMCPS), which did the initial assessment and removal decision regarding J.W., Jr., did not allow the child to stay in the home and provide assistance to the parents to catch him up on his immunizations, dental care, and gross and fine motor development delays.  The State and the GAL objected to the relevance of the question, because the case manager works for

---

[3] J.W., Jr. was removed in January 2020 under a temporary physical custody order.  The court entered a dispositional order in June 2020, which listed multiple conditions for Q.M. to satisfy to return her son to her care.

[4] J.W. elected to have a jury to decide fact-finding regarding the grounds alleged in the TPR petition.  After the jury found both alleged grounds existed, a joint dispositional hearing with Q.M.'s case was held.

Children's of Wisconsin and not DMCPS and would have no direct knowledge of the intake assessment decision making. Q.M.'s counsel argued that DMCPS's actions seemed "rash" and were based on the parents' separate and joint past history with DMCPS. Q.M. had four older children in the care of family guardianships. J.W. had eight older children not in his care. The circuit court ruled that the question was not relevant and that the underlying dispositional order was a "judicial fact." The court stated that it was "appropriate for [DMCPS] to look at prior [DMCPS] history of both of the parents because those patterns tend to be difficult to change, and so that certainly would have played in their thought process as well."

¶5    During the court review of the dispositional decision, the circuit court addressed its concerns about J.W. Jr.'s safety in the care of his parents. The court stated that Q.M.'s addictions were painful, J.W. minimized her drug addiction, and both failed to show a protective capacity for their son. The court addressed the son's health at removal and how neither parent appeared to acknowledge the risk.

> [THE COURT:] The description of his state of being at six months suggests a significant level of negligence and a threat to his life[.]
>
> ….
>
> So from DMCPS' perspective here we have a six month old with severe neglect whose very life is potentially in danger. We have a mom and a dad who have a long-standing demonstrated history of not being able to care for their own children.

¶6    The circuit court then reviewed on the record each of the required statutory factors under WIS. STAT. § 48.426(3). The court dismissed the idea of a guardianship with the foster parents because it would not provide stability for J.W,

Jr., as demonstrated by Q.M.'s efforts to reverse her mother's guardianship over three of her older children. The court stated that "what he doesn't need is to be on the roller coaster. He needs a solid foundation to navigate whatever … challenges" might arise in the future. Finally, the court ordered the termination of Q.M. and J.W.'s parental rights.

¶7     Q.M. appeals.

## DISCUSSION

¶8     The decision to terminate parental rights is within the discretion of the circuit court. *See* ***Gerald O. v. Susan R.***, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. ***Dane Cnty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶9     Q.M. argues that the circuit court erred when it concluded that the termination of her parental rights was in the best interests of her son. She asserts that the circuit court failed to allow her to present evidence with regard to the necessity of the initial removal of J.W., Jr., in January 2020. It is undisputed that during the TPR proceedings, Q.M. had the right to present additional relevant information to the court to factor into its considerations of the best interests of J.W., Jr. *See* WIS. STAT. § 48.427 ("Any party may present evidence relevant to the issue of disposition[.]") However, the circuit court concluded that the case manager would not have personal knowledge of the initial assessment and removal, because she works for the agency managing the case and not DMCPS.

Further, the court explained that DMCPS could take into account both parents' prior DMCPS involvement. During the hearing and on appeal, Q.M. failed to explain what specific evidence she was barred from offering or what she was precluded from asking.

¶10   To the extent that we interpret Q.M. to argue she wanted to present evidence relevant to WIS. STAT. § 48.426(3)(b)—"[t]he age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home,"—the record does not reflect that the court prevented her from attempting to offer evidence that J.W., Jr. was not severely neglected at the time of removal. The court acknowledged that Q.M. felt that the "removal happened really fast, but DMCPS has to err on the side of caution with a six month old because they could die really, really quick." Q.M. asserts that it was unfair that the necessity of the removal was raised by the court, but that she was unable to present a counter view. However, Q.M. was not disputing J.W., Jr.'s health at the time of removal, only that DMCPS could have taken a different approach. Suggesting a different approach is pure speculation. It is not relevant evidence.

¶11   The State argues that Q.M.'s argument about the removal is an impermissible collateral attack on the underlying order.[5] The State contends that Q.M.'s opportunity to challenge whether it was necessary to remove her son from her care occurred during the juvenile court proceedings. Q.M. argues she is not

---

[5] A collateral attack on a judgment is "an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it." *Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶27, 299 Wis. 2d 637, 728 N.W.2d 652 (quoting *Zrimsek v. American Auto. Ins. Co.*, 8 Wis. 2d 1, 3, 98 N.W.2d 383(1959)).

lodging a collateral attack because she does not dispute the validity of the underlying CHIPS petition, temporary physical custody order or dispositional order. We conclude there is no need to address the collateral attack issue based on Q.M.'s clarification in her reply brief that "[s]he simply wished to show ways that the out-of-home placement could have been avoided, in order to persuade the judge to make the discretionary decision that it was appropriate to continue efforts at reunification rather than TPR."

¶12 Q.M. misunderstands the best interests focus during the dispositional hearing. Q.M. posits that J.W., Jr.'s removal and out-of-home placement could have been avoided if DMCPS had instead offered in-home care and supervision; therefore, successful in-home supervision could have been achieved and safe reunification was still possible. Unquestionably, the court "may consider factors favorable to the parent, including prognosis for the parent's markedly changed behavior." *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶29, 255 Wis. 2d 170, 648 N.W.2d 402. However, Q.M. does not offer evidence of markedly changed behavior—instead, she offers speculation that the situation would be different if different events had happened over the past two years. Such speculation is both not relevant evidence and not focused on J.W., Jr.'s best interests.

¶13 We affirm the circuit court's conclusion to terminate Q.M.'s parental rights. In our examination of the record, the circuit court considered the relevant facts of J.W. Jr.'s best interests and made a thorough record explaining its goals of stability and permanency for J.W., Jr. It considered the proper standard of law, reviewing the required statutory factors and addressed the parents directly with the court's concerns about the lack of progress in understanding protective care of J.W., Jr. The record reflects that Q.M. has made no demonstrable progress in

controlling her drug addiction or mental health. The case manager discussed serious ongoing concerns about Q.M.'s understanding of the impact on J.W., Jr. of her drug use and domestic violence issues. In light of these facts and under the "polestar" of the best interests of the child in the disposition of TPR proceedings, we conclude that the circuit court demonstrated rational decision-making and reached a reasonable decision. *See* ***State v. Margaret H.***, 2000 WI 42, ¶4, 234 Wis. 2d 606, 610 N.W.2d 475. We conclude the court's decision to terminate Q.M's parental rights was a proper exercise of its discretion. ***Mable K.***, 346 Wis. 2d 396, ¶39.

## CONCLUSION

¶14 For the reasons stated above, we affirm the order terminating Q.M.'s parental rights to J.W., Jr.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.